**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ELIO GALO, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

CLEO COMMUNICATIONS US, LLC, CLEO COMMUNICATIONS, INC., and THE HERTZ CORPORATION,

Defendants.

Civil Action No.: 1:25-cv-04387

**CLASS ACTION COMPLAINT**

AND NOW, comes the Plaintiff, Elio Galo, on behalf of himself and all others similarly situated, by and through his undersigned counsel, Yanling Jiang, Esquire and the law firm of JiangIP LLC; Sara J. Watkins, Esquire; D. Aaron Rihn, Esquire; and the law firm of Robert Peirce & Associates, P.C., and claims damages of the Defendants, Cleo Communications US, LLC, Cleo Communications, Inc., (together "Cleo") and The Hertz Corporation ("Hertz") (collectively, "Defendants"), upon causes of action, the following of which are statements:

1. Plaintiff brings this action against Defendants for the injuries he and others similarly situated sustained as a result of Defendants inadequately storing individuals' Personal Identifiable Information ("PII").

2. Cleo is a third-party vendor that provides software services to clients, including co-Defendant The Hertz Corporation.

3. Hertz is a car-rental company that operates locations nationwide.

4. Defendants collected and maintained certain PII of Plaintiff and the putative Class

Members, who were customers and/or employees of Cleo's clients, including Hertz.

5. Cleo found suspicious activity on its network, indicating a data breach. Based on a subsequent forensic investigation, Cleo determined that cybercriminals infiltrated the inadequately secured computer environment and accessed data files, including files containing Hertz data, from October 2024 through December 2024 (the "Data Breach"). The investigation further determined that, through this infiltration, cybercriminals accessed and stole files containing the sensitive personal information of tens of thousands of individuals.

6. According to Defendants, the personal information accessed by cybercriminals involved a wide variety of PII, including names, dates of birth, Social Security Numbers, driver's license numbers or other state identification numbers, financial account information, payment card information, and health insurance information (hereinafter, "PII").

7. As part of their business, and in order to gain profits, Defendants obtained and maintained Plaintiff's and Class Members' PII.

8. By taking possession and control of Plaintiff's and Class Members' PII, Defendants assumed a duty to securely store and protect the Personal Identifiable Information of Plaintiff and the Class.

9. Defendants breached this duty and betrayed the trust of Plaintiff and Class Members by failing to properly safeguard and protect their PII, thus enabling cybercriminals to access, acquire, appropriate, compromise, disclose, encumber, exfiltrate, release, steal, misuse, and/or view it.

10. Defendants' misconduct in failing to implement adequate and reasonable security measures to protect Plaintiff's and Class Members' PII, failing to timely detect the Data Breach, failing to take adequate steps to prevent and stop the Data Breach, failing to disclose the material facts that it did not have adequate security practices in place to safeguard the PII, and failing to

provide timely and adequate notice of the Data Breach, caused substantial harm and injuries to Plaintiff and Class Members across the United States.

11. Due to Defendants' negligence and failures, cybercriminals obtained, and now possess, everything they need to commit personal identity theft and wreak havoc on the financial and personal lives of thousands of individuals for decades to come.

12. Plaintiff brings this class action lawsuit to hold Defendants responsible for their grossly negligent—indeed, reckless—failure to use statutorily required or reasonable industry cybersecurity measures to protect Class Members' PII.

13. As a result of the Data Breach, Plaintiff and Class Members have already suffered damages. For example, now that their PII has been released into the criminal cyber domains, Plaintiff and Class Members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiff and Class Members are now forced to deal with the danger of identity thieves possessing and using their PII.

14. Additionally, Plaintiff and Class Members have already lost time and money responding to and mitigating the impact of the Data Breach, which efforts are continuous and ongoing.

15. Plaintiff brings this action individually and on behalf of the Class and seeks actual damages and restitution. Plaintiff also seeks declaratory and injunctive relief, including significant improvements to Defendants' data security systems and protocols, future annual audits, Defendants-funded long-term credit monitoring services, and other remedies as the Court sees necessary and proper.

## PARTIES

16. Plaintiff Elio Galo is an adult individual who resides in South Bend, Indiana 46601.

17. Defendant Cleo Communication, Inc. is an Illinois corporation with a principal

place of business in Rockford, Illinois.

18. Defendant Cleo Communications US, LLC is a limited liability company with its headquarters and principal place of business in Rockford, Illinois. Upon information and belief, Defendants' members are domiciled in Illinois.

19. Defendant The Hertz Corporation is a Delaware corporation with its principal place of business in Estero, Florida.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs. The number of Class Members exceeds 100, many of whom have different citizenship from Defendants, including the Plaintiff. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

21. This Court has personal jurisdiction over the Defendants because the Defendants conduct business within this District and Cleo maintains its principal place of business in this District. Accordingly, Defendants have sufficient minimum contacts within the State of Illinois.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendants Cleos' principal place of business is in this District and/or have members who reside in this District; therefore, Defendants Cleo reside in this District pursuant to 28 U.S.C. § 1391(c)(2). Further, venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Class' claims also occurred in this District.

## FACTS

**A. The Data Breach**

23. Cleo is a third-party vendor that provides software services to clients, including co-Defendant The Hertz Corporation.

24. Hertz is a rental car company that operates locations nationwide, including through its brands Thrifty Car Rentals and Dollar Car Rental (collectively "Hertz").

25. Plaintiff and Class Members are either current or former customers and/or employees of Cleos' clients, including Hertz.

26. In the course of their relationship, customers and employees at Cleos' clients, including Plaintiff and Class Members, provided Cleo with at least the following: names, Social Security Numbers, dates of birth, contact information, driver's license information, and other sensitive information.

27. Upon information and belief, in the course of collecting PII from customers and employees, including Plaintiff, Defendants promised to provide confidentiality and adequate security for the data it collected from them through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

28. Plaintiff and the Class Members, as customers and/or employees of Cleos' clients, including, Hertz, relied on this sophisticated business entity to keep their sensitive PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Consumers, in general, demand security to safeguard their PII, especially when their Social Security Numbers and other sensitive PII are involved.

29. Despite this, Cleo recently identified suspicious activity on its computer network,

indicating a data breach. Based on a subsequent forensic investigation, Cleo determined that cybercriminals infiltrated the inadequately secured computer environment and accessed data files, including files containing Hertz data, from October 2024 through December 2024.[1] The investigation further determined that, through this infiltration, cybercriminals accessed and stole files containing the sensitive personal information of tens of thousands of individuals.[2]

30. According to Defendants, the personal information accessed by cybercriminals involved a wide variety of PII, including names, dates of birth, Social Security Numbers, driver's license numbers or other state identification numbers, financial account information, payment card information, and health insurance information.

31. Despite the seriousness of the PII that was exposed and the attendant consequences to Plaintiff and Class Members as a result of the exposure, Defendants failed to disclose the Data Breach for months from the time of the Breach.

32. Months later, in April of 2025, Hertz, on behalf of all Defendants, began sending Plaintiff and Class Members a Notice informing them that:

> **What Happened?** Cleo is a vendor that provides a file transfer platform used by Hertz for limited purposes. On February 10, 2025, we confirmed that Hertz data was acquired by an unauthorized third party that we understand exploited zero day vulnerabilities within Cleo's platform in October 2024 and December 2024. Hertz immediately began analyzing the data to determine the scope of the event and to identify individuals whose personal information may have been impacted.[3]

33. Defendants failed to explain in the Notice Letter the identities of the cybercriminals who perpetrated this Data Breach, the details of the root cause of the Data Breach,

---

[1] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792- a1252b4f8318/342d0134-8941-4641-aa87-75b468bc6415.html.

[2] https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage.

[3] The "Notice Letter". A sample copy is available at https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792- a1252b4f8318/342d0134-8941-4641-aa87-75b468bc6415.html

the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these omitted details have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their PII remains protected.

34. Based on the Notice Letter received by Plaintiff, it is plausible and likely that Plaintiff's PII was stolen in the Data Breach.

35. Upon information and belief, the unauthorized third-party cybercriminal gained access to the PII and has engaged in (and will continue to engage in) misuse of the PII, including marketing and selling Plaintiff's and Class Members' PII on the dark web.

36. Accordingly, Defendants had obligations created by industry standards, common law, statutory law, and its own assurances and representations to keep Plaintiff and Class Members' PII confidential and to protect such PII from unauthorized access.

37. Nevertheless, Defendants failed to spend sufficient resources on preventing external access, detecting outside infiltration, and training their employees to identify email-borne threats and defend against them.

38. The stolen PII at issue has great value to the hackers, due to the large number of individuals affected and the fact that the sensitive information was part of the data that was compromised.

**B. <u>Facts Specific to Plaintiff Elio Galo</u>**

39. On or about August 1, 2023, Plaintiff Galo became a customer of Hertz.

40. Plaintiff Galo would utilize Hertz's services for work-related travel. For example, Plaintiff Galo has rented vehicles from Hertz at its Mishawaka, Indiana location; South Bend, Indiana airport location; Seattle-Tacoma airport located in Seattle, Washington; and Chicago O'Hare airport located in Chicago, Illinois.

41. Specifically, Plaintiff Galo rented vehicles from Hertz on August 1, 2024; August 13, 2024; September 16, 2024; October 7, 2024; January 7, 2025; and March 15, 2025.

42. During the rental process, Plaintiff Galo shared his PII with the Defendants.

43. Plaintiff Galo is very careful when it comes to his PII. Plaintiff Galo has never knowingly shared any PII over the internet to unsecured locations. Plaintiff Galo stores his PII in a secure location and is careful about not giving access to this information to any unauthorized third parties.

44. Plaintiff Galo provided his PII to the Defendants solely for the purpose of utilizing Hertz's services and reasonably assumed that the Defendants would use even basic security measures to keep his PII safe. For these reasons, the Defendants were in possession of Plaintiff Galo's PII during the time of the Data Breach.

45. Plaintiff Galo suffered injury from the loss of privacy when his PII was gathered by a third party without authorization.

46. Plaintiff Galo also has suffered injury in the form of damages to and diminution in the value of his PII, a form of intangible property that Plaintiff Galo entrusted to Defendants.

47. The Data Breach has caused Plaintiff Galo to suffer imminent and impending injury arising from a substantially increased risk of fraud, identity theft, and misuse of his PII as Plaintiff Galo will continue to struggle protecting himself from the actions of criminals with his information.

48. Plaintiff Galo has spent large amounts of time dealing with the repercussions of the Data Breach. This includes tasks like researching the Data Breach, monitoring his own accounts to ensure no fraudulent activity was occurring with his information, and spending time canceling and reordering all his personal and business payment cards.

49. The increased risk of imminent harm and loss of privacy has caused Plaintiff Galo to suffer increased levels of stress, fear, and anxiety.

50. Plaintiff Galo has a strong interest in ensuring that his PII, which, upon information and belief, continues to be possessed by the Defendants, is safeguarded from future breaches.

## C. The Data Breach was Foreseeable

51. The Cybersecurity and Infrastructure Security Agency explained that home users, organizations, and technical staff should "protect your organization by identifying assets that are searchable via online tools and taking steps to reduce that exposure."[4]

52. Due to the increasing risk of cyberattacks of this magnitude, the Cybersecurity and Infrastructure Security Agency (hereinafter referred to as "CISA") has created an official alert and statement page, often partnering with the Federal Bureau of Investigation, that aims to guard stakeholders against the continued growth of ransomware threats.[5]

53. Due to this, it can reasonably be assumed that the increase in cybersecurity attacks and the open concern for future attacks by government organizations, was widely understood by the public and to all companies in the Defendants' industry, which includes the Defendants.

## D. Value of Personally Identifiable Information

54. The PII of individuals is of an incredibly high value to criminals, as they reportedly are willing to pay high amounts of money to obtain this information. Studies indicate that criminals are willing and able to pay around $1,000 to gain enough personally-identifiable information to successfully steal a person's identity.[6]

---

[4] *See* How Can I Protect Against Ransomware, available at https://www.cisa.gov/stopransomware/how-can-i-protect-against-ransomware.

[5] *See* Official Alerts & Statements – CISA, (CISA, 2024), *available at:* https://www.cisa.gov/stopransomware/official-alerts-statements-cisa

[6] *See* Revealed – How Much is Personal Information Worth on the Dark Web? (Smith, 2023) https://www.insurancebusinessmag.com/us/news/breaking-news/revealed--how-much-is-personal-information-worth-on-the-dark-web-444453.aspx

55. Based on the aforementioned, the data that was compromised in the Data Breach is on par with this level of value for criminals, as it was not simply credit card information that was compromised, but instead was PII.

56. The danger of PII, like Social Security Numbers, in the hands of criminals is extreme, as criminals can open bank accounts, apply for loans, obtain different forms of identification, and even create insurance policies in a person's name.[7]

57. Data Breaches contain an extra layer of risk when it is realized that there is oftentimes a delay between when theft occurs and when it is discovered, in addition to the delay that can occur between theft and usage of stolen information. The U.S. Government Accountability Office explained that stolen information will sometimes be held for a year or longer before being used for fraudulent activity. However, once this usage begins, it can go on for years as it is very hard to stop this activity once it starts.[8]

58. The Defendants knew, or reasonably should have known, that there is an incredibly high level of importance when it comes to safeguarding the PII of the Plaintiff and Class Members. There are foreseeable consequences that would occur if the Defendants' security systems were breached, which includes significant costs that would be placed upon the Plaintiff and Class Members.

59. Plaintiff and Class Members now will have to endure constant surveilling of their PII, monitoring of their personal finances, and loss of rights for years to come. The Class is incurring, and will continue to incur, such damages in addition to any fraudulent use of their PII.

---

[7] See Is Your Social Security Number for Sale on the Dark Web? What To Do if Your Personal Information Is Compromised (Knowles and Trejos, 2024) https://allaboutcookies.org/compromised-ssn-dark-web#:~:text=Once%20a%20criminal%20has%20your,web%20once%20it%20exists%20there.

[8] Report to Congressional Requesters, GAO, (June 2007), available at: https://www.gao.gov/assets/gao-07-737.pdf

60. It is within reason that the Defendants were, or should have been, fully aware of the significant volume and nature of the data on their network, and thus the significant number of innocent people who would be harmed if a breach were to occur.

61. The injuries sustained by the Plaintiff and Class Members were a direct result of the Defendants' failure to adopt and enforce adequate security measures for the protection of the PII of Plaintiff and Class Members.

62. When the Defendants decided to obtain, collect, use, and benefit from the possession of Plaintiff' and Class Members' PII, they assumed legal responsibility and knew, or should have known, that they were responsible for the protection of the Plaintiff' and Class Members' PII from unauthorized disclosure.

63. The Plaintiff and Class Members have taken the reasonable steps to maintain the confidentiality of their PII.

64. The Plaintiff and Class Members reasonably expected the Defendants to adopt secure data protection policies that are designed to keep their PII confidential and protected, to only use their PII for business-related purposes, and to prevent any unauthorized disclosures of the PII.

**E. Defendants Failed to Protect Plaintiff' and Class Members' Personally Identifiable Information**

65. Defendants failed to prevent this Data Breach by failing to properly secure systems which would contain the PII of Plaintiff and Class Members. Defendants also had other reasonable options for security, including destroying any data for individuals who they had not had a business relationship with for an extended period of time.

66. Companies that are similar both in scale and industry to the Defendants have received constant warnings and alerts regarding the need to protect their data, which only exacerbates the negligent actions of Defendants.

67. Defendants failed to take any form of necessary and expected steps to protect the PII of Plaintiff and Class Members despite the continuous public announcements of the potential for data breaches and compromises.

68. The Cybersecurity & Infrastructure Security Agency suggests that to protect your system from potential cyber-attacks, Defendants should or could have established:[9]

a. Control access;

b. Harden Credentials;

c. Establish centralized log management;

d. Use antivirus solutions;

e. Employ detection tools;

f. Operate services exposed on internet-accessible hosts with secure configurations; and,

g. Keep software updated.

69. In order to protect yourself from cyber-attacks, including attacks like the one that resulted in this Data Breach, the Defendants could, and should, have implemented the following measures which were suggested by the Washington State Department of Financial Institutions: [10]

a. Be on the lookout for suspicious links, attachments, and downloads;

b. Create and use strong passwords;

[9] *See* Weak Security Controls and Practices Routinely Exploited for Initial Access (2022) https://www.cisa.gov/news-events/cybersecurity-advisories/aa22-137a

[10] *See* Protecting yourself from cyber attacks https://dfi.wa.gov/consumers/cyber-attacks-tips

c. Use multi-factor authentication whenever possible;

d. Use secure internet communications;

e. Update your anti-virus software regularly; and,

f. Report anything suspicious to your IT department.

70. Due to the fact that the Defendants possessed the PII of Plaintiff and Class Members, the Defendants should have implemented these measures and strictly adhered to them to help prevent any potential cyberattacks. However, the Defendants continually failed to implement any of the aforementioned security measures, like password protection, encryption, or multifactor authentication.

**F. <u>Defendants Failed to Comply with Federal Trade Commission Guidelines</u>**

71. The Federal Trade Commission ("FTC") has circulated countless guides for corporations which all alert the public to the increased importance of maintaining strong data security practices.

72. Per its website, the FTC has established a "sound data security plan" which they believe should be built upon five principles:[11]

a. Take Stock:

i. Take inventory of all of your materials that could store sensitive data;

ii. Know what PII your corporation possesses and the ways in which it is received; and,

iii. Understand where your PII is stored and place an emphasis on understanding the varying levels of risk attached to different forms of information.

b. Scale Down:

[11] *See* Protecting Personal Information: A Guide for Business https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business

i. Only record Personally Identifiable Information that is required for business operations;

ii. Do not use PII for business operations that could be completed through the use of some different operations system; and,

iii. Follow the "Principle of Least Privilege" which implies that employees should have access to only the information they need to do their job.

c. Lock It:

i. Store paper documents or files properly, whether that be under lock and key or in a controlled environment;

ii. Require files that contain any PII be kept in a locked location and ensure that employees understand the importance of the data they are working with;

iii. Ensure that every method of data collection or data releasing is secure, and criminals cannot potentially tamper with the data during these processes;

iv. Understand all aspects of electronic security including things like vulnerable spots and the best ways to secure the potential risks of storing information electronically;

v. Have the needed staff and employees trained to interact with this data and ensure its safe keeping; and,

vi. Use the most up-to-date and secure electronic security systems that your corporation is able to possess. Having the best security is the best form of prevention.

d. Pitch It:

i. Implement information disposal practices that are reasonable to secure the protection of peoples' PII.

e. Plan Ahead:

i. Have a plan in place to respond to security incidents before they potentially occur; and,

ii. Have systems in place for acting after a data breach, which includes a plan of action for business operations and talking to the public.

73. The FTC has openly placed an emphasis on corporations keeping only the PII that they need for operations and protecting the information that they do decide to keep. Properly disposing of information that a corporation no longer needs is the best way to limit risk when it comes to potential data breaches, in addition to going to great lengths to protect the information that a corporation does decide to keep.

74. The FTC, via Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, has allowed for legal action to be taken against businesses for failing to reasonably protect PII. The FTC allows this course of action because it considers the failure to employ reasonable security measures to protect against unauthorized access to confidential information to be a violation of the "unfair methods of competition in or affecting commerce" language set forth in 15 U.S.C. § 45.

75. Defendants' failure to establish even the most basic data security actions led to a lack of protection against unauthorized access to Plaintiff' and Class Members' PII, which constitutes a violation of Section 5 of the FTC Act, 15 U.S.C. § 45.

76. Defendants were fully aware of the dangers of failing to protect the PII of the Plaintiff and Class Members and still failed to meet this obligation.

## G. <u>Defendants Failed to Comply with Industry Standards</u>

77. The automobile/car rental industry is at an extreme risk when it comes to data security because of the nature of the PII that they tend to collect during their day-to-day operations.

78. The aforementioned information has clearly established the expectation of corporations, like the Defendants, to implement different forms of best practice in order to establish a strong data security system.

79. The Defendants routinely failed to meet the minimum standards for cybersecurity, and in turn failed to protect any of the PII that they possessed.

80. This failure by the Defendants to meet any of the industry standards when it comes to cybersecurity clearly opened the door for the Data Breach that occurred.

**H. The Defendants' Failure to Protect the Personally Identifiable Information of the Plaintiff and the Proposed Class Has Led to Significant Risk and Substantial Harm**

81. The injuries sustained by the Plaintiff and Class Members are a direct result of the unauthorized access to their PII, which was caused by the failures of the Defendants.

82. The potential for identify theft has now become a real danger for the Plaintiff and Class Members, as this occurs when an unauthorized user gains access to a person's personal and financial information.

83. The USA government web portal establishes identity theft as someone using personal information without an individual's permission. This information includes names and addresses, credit card information, Social Security Numbers, bank account numbers, and medical insurance account numbers.[12]

84. When identity theft occurs, cybercriminals can use a person's PPI to open new banking accounts, access a person's social media accounts, access a person's current bank accounts, gain medical services, and other actions that all ultimately lead to the suffering of an individual's way of life.

[12] *See* Identity Theft (USA.gov) https://www.usa.gov/identity-theft

85. The Data Breach, a direct result of the Defendants' failure to protect the Plaintiff and Class Members, has led to distinct damages and the potential for future suffering which includes:

a. Loss of value, control, and continued publication of their PII;

b. Continued costs connected to attempting to fix the failures of the Defendants;

c. Lost wages and Opportunity Costs resulting from the lasting impacts of the Data Breach, including time spent researching and attempting to prevent the potential for fraudulent actions related to their PII; and,

d. Continued risk to their Personally Identifiable Information as it still remains in the possession of the Defendants, who clearly have established the inability to provide the appropriate security measures needed to handle this level of data.

86. A common understood impact of the negative impacts of a criminal gaining access to a person's PII is the lasting impact of identity theft on a person's credit.

87. Cybercriminals can open lines of credit using a person's identity, and then decline to pay the bills. This action is commonplace in identity theft and oftentimes leads to the accumulation of debt that hurts an innocent person's credit scores. While this can be remedied by working with collection agencies and banks, it only leads to further costs and lost opportunity costs as more time is spent dealing with the actions of cybercriminals.[13]

[13] *See* Identity Theft: What it is, What to Do (Equifax) https://www.equifax.com/personal/education/identity theft/articles//learn/whatitiswhattodo/#:~:text=Thieves%20could%20open%20new%20lines,increase%20in%20your %20credit%20utilization.

88. Per the FTC and other agencies, the number of complaints of fraud increased by 1.3% in 2023 when compared to 2022, and the total financial loses rose 16% to $10.3 billion ($8.9 billion in 2022). [14]

89. In addition to high costs to repair their financial standings after an identity theft, Plaintiff and Class Members will have to spend years staying vigilant with their data as sometimes cybercriminals will wait years to use their data.

90. The Defendants neglected to report the theft of PII for months after the original theft, only worsening the situation for the Plaintiff and the Class Members.

## I. Plaintiff's and Class Members' Damages

91. As of this moment, the Defendants have taken few steps to remedy their failures after allowing the PII of the Plaintiff and Class Members to be subject of the theft. The Defendants have offered 12 months of credit monitoring which has been previously established to be woefully short of a proper amount of time.

92. Defendants have required Plaintiff and Class Members to spend the time signing up for the credit monitoring services, only furthering the damages regarding lost time and opportunity costs.

93. In addition to the time spent setting up these accounts, the Plaintiff and Class Members are going to lose time and opportunity costs consistently as a result of this Breach. The Plaintiff and Class Members will have to constantly review their financials for fraudulent actions, potentially alert their credit companies of potential fraud, contact their financial institutions to alert them of potential risk, continue to keep an eye on their PII for years to come focusing on

[14] *See* U.S. Fraud and Identity Theft Losses Topped $10 Billion In 2023 (Akin,2024) https://www.experian.com/blogs/askexperian/identitytheftstatistics/#:~:text=The%20number%20of%20fraud%20complaints,from%20%248.9%20billion%20in%202022.

unauthorized access to their accounts, and continue many other time-consuming actions centered around curing the failures of the Defendants.

94. The Plaintiff and Class Members have been damaged by the potential threat of identity theft, which is now a constant and increased risk stemming from the concession of their PII by the Defendants.

95. In addition, the Plaintiff and Class Members have a justifiable interest in protecting their PII, which is reasonably believed to still be in the possession of the Defendants. This ensures a heightened level of attention on the Defendants' ability to implement correct security measures going forward and ensure the protection of the Plaintiff and Class Members Personally Identifiable Information extending into the future.

96. As a whole, the Plaintiff and Class Members have suffered, and are going to continue to suffer, injuries stemming from the failures of the Defendants. These injuries vary and all stem from the impact of the Data Breach that the Defendants failed to properly protect its systems against.

**CLASS ALLEGATIONS**

97. The Plaintiff brings this nationwide class action on behalf of himself and on behalf of others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

98. The Nationwide Class that the Plaintiff seeks to represent is defined as the following:

a. All persons whose Personally Identifiable Information was actually or potentially accessed or acquired during the Data Breach event that is the subject of the Notice of Data Breach (hereinafter referred to as the "Class").

99. Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state, or local governments, including, but not limited to, its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

100. Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

101. **Numerosity - Fed R. Civ. P. 23(a)(1)**: Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are reported to be roughly 2.3 million persons whose PII was improperly accessed in the Data Breach, and the Class is apparently identifiable within Defendants' records.

102. **Commonality - Fed. R. Civ. P. 23(a)(2) and (b)(3)**: Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

a. Whether and to what extent Defendants had a responsibility to ensure the safe keeping of the Plaintiff's and Class Members' PII;

b. Whether Defendants had a responsibility not to disclose the PII of the Plaintiff and Class Members to unauthorized third parties;

c. Whether Defendants failed to properly protect the PII of the Plaintiff and Class Members;

d. Whether and when Defendants actually learned of the Data Breach;

e. Whether Defendants adequately, promptly, and accurately informed the Plaintiff and Class Members that their PII had been compromised;

f. Whether Defendants violated the laws by failing to notify the Plaintiff and Class Members in a prompt fashion that their PII had been compromised;

g. Whether Defendants failed to employ reasonable security measures that match the nature and scope of the information compromised in the Data Breach;

h. Whether Defendants adequately addressed and fixed the security concerns which permitted the Data Breach to occur;

i. Whether the Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendants' wrongful conduct;

j. Whether the Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct; and,

k. Whether the Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

103. **Typicality - Fed. R. Civ. P. 23(a)(3)**: Plaintiff's claims are representative of those of other Class Members because all Class Members had their PII conceded as a result of the Data Breach due to Defendants' misfeasance.

104. Policies Generally Applicable to the Class: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to the Plaintiff.

105. **Adequacy - Fed. R. Civ. P. 23(a)(4)**: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that the Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. The Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages the Plaintiff has suffered are typical of other Class Members. The Plaintiff also has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

106. **Superiority and Manageability - Fed. R. Civ. P. 23(b)(3)**: Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants.

107. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because:

a. Defendants would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources;

b. The costs of individual suits could unreasonably consume the amounts that would be recovered;

c. Proof of a common course of conduct to which the Plaintiff is exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and,

d. Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

108. The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

109. Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

110. Unless a Class-wide injunction is issued, Defendants may continue in its failure to properly secure the PII of Class Members, may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and may continue to act unlawfully as set forth in this Complaint.

111. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendants owed a legal duty to the Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

b. Whether Defendants breached a legal duty to the Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

c. Whether Defendants failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

d. Whether an implied contract existed between Defendants on the one hand, and the Plaintiff and Class Members on the other, and the terms of that implied contract;

e. Whether Defendants breached the implied contract;

f. Whether Defendants adequately and accurately informed the Plaintiff and Class Members that their PII had been compromised;

g. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and,

h. Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendants' wrongful conduct.

## CAUSES OF ACTION

### COUNT 1
### NEGLIGENCE
### (On Behalf of Plaintiff and the Putative Nationwide Rule 23 Class)

112. All the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

113. The Plaintiff and the Class entrusted their PII to Defendants only on the premise, and with the understanding, that Defendants would safeguard their information, use their information for business purposes only and/or not disclose their PII to unauthorized third parties.

114. Defendants knew, or reasonably should have known, of the sensitivity of the PII and the types of harm that the Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed.

115. Defendants knew, or reasonably should have known, that the failure to exercise due care in the collecting, storing, and using of the PII of the Plaintiff and the Class involved an unreasonable risk of harm to the Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

116. By accepting, storing, and maintaining Plaintiff's and Class Members' PII, Defendants undertook an "independent duty," untethered to any contract between Defendants and Plaintiff or the Class, to:

a. Exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties;

b. Design, maintain, and test security protocols to ensure that the PII of the Plaintiff and the Class Members in Defendants' possession was adequately secured and protected;

c. Exercise appropriate clearinghouse practices to remove PII they were no longer required to retain pursuant to regulations;

d. Implement and employ procedures to detect and prevent the improper and unauthorized access, dissemination, and misuse of the PII; and,

e. Adequately disclose to Plaintiff and members of the Class that PII in Defendants' possession may have been compromised, how it was compromised, and the precise types of data that were compromised such that Plaintiff and members of the Class could take steps to mitigate the damage.

117. Defendants' duty to use reasonable security measures arose as a result of the special relationship that existed between Defendants, the Plaintiff and the Class in that the Plaintiff and the Class entrusted Defendants with their confidential PII as a necessary prerequisite of obtaining Defendants' services.

118. A breach of security, unauthorized access, and resulting injury to the Plaintiff and the Class was reasonably foreseeable, due to the nature of Defendants' industry, and particularly in light of Defendants' inadequate security practices. Defendants knew, or should have known, of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendants' systems.

119. The Plaintiff and the Class had no ability to protect their PII that was, and possibly remains, in Defendants' possession.

120. Defendants were in the best position to protect against the harm suffered by the Plaintiff and the Class as a result of the Data Breach.

121. Defendants, through their actions and/or omissions, unlawfully breached their duties to the Plaintiff and the Class in all, or some, of the following particulars;

a. Failing to take reasonable steps and opportunities to prevent the Data Breach, as plead herein;

b. Failing to comply with industry standards, regulations, and practices at the time for the safekeeping of the PII of the Plaintiff and the Class, including basic encryption techniques freely available to Defendants, as pled herein;

c. Failing to correct, update, or upgrade its security protections, thus causing the Data Breach, as pled herein;

d. Failing to heed industry warnings and alerts to provide adequate safeguards to protect the PII of the Plaintiff and the Class in the face of increased risk of theft, as pled herein;

e. Failing to have appropriate procedures in place to detect and prevent dissemination of PII, as pled herein;

f. Failing to exercise appropriate clearinghouse practices by failing to remove PII they were no longer required to retain pursuant to regulations, as plead herein; and,

g. Failing to adequately and timely disclose to the Plaintiff and the Class the existence and scope of the Data Breach, as pled herein.

122. Section 5 of the FTC Act prohibits unfair practices inside of commerce and has been enforced in a fashion that includes the failure to properly protect persons against the theft of their PII.

123. The Defendants violated Section 5 of the FTC Act when it failed to adopt reasonable security measures centered around protecting a person's PII and lacked the care to comply with commonplace industry standards, which constitutes negligence *per se*:

a. Both the Plaintiff and the Class are members of the class of persons that the FTC Act was designed to protect;

b. The harm that occurred that resulted from the Data Breach was a form of harm that the FTC Act was designed to guard against; and,

c. The FTC has taken enforcement actions against corporations for failure to employ responsible data protection measures and failure to avoid unfair and deceptive practices, which lines up consistently with the harm experienced by the Plaintiff and the Class.

124. But for Defendants' wrongful and negligent breach of their duties owed to the Plaintiff and the Nationwide Class, the PII of the Plaintiff and the Class would not have been compromised.

125. As a direct and proximate result of Defendants' negligence and negligence *per se*, the Plaintiff and the Class have suffered and will suffer injury, including, but not limited to, the following:

a. Actual identity theft;

b. The loss of the opportunity of how their PII is used;

c. The compromise, publication, and/or theft of their PII;

d. Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII;

e. Lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft;

f. Costs associated with placing freezes on credit reports;

g. The continued risk to their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of Plaintiff and the Class; and,

h. Present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of the Plaintiff and the Class.

126. As a direct and proximate result of Defendants' negligence and negligence *per se*, the Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

127. Additionally, as a direct and proximate result of Defendants' negligence and negligence *per se,* the Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII in its continued possession.

128. As a direct and proximate result of Defendants' negligence and negligence *per se*, the Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiff and the Putative Nationwide Rule 23 Class)**

129. All the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

130. Plaintiff and the Class Members, as customers and/or employees of Cleos' clients, including, Hertz, were required to provide the Defendants with their PII, which the Defendants accepted.

131. When the Defendants agreed to provide their service, and the Plaintiff and Class Members provided their PII, this provided the groundwork for an implied contract.

132. Through this agreed upon transaction, the Plaintiff and Class Members mutually agreed to an implied contract with the Defendants. An implied contract of this nature includes an implied understanding and agreement that:

a. The Defendants would protect the Plaintiff's and Class Members' PII from any unauthorized access or activity;

b. The Defendants would not store PII that it no longer reasonably needed, and would delete the information of Plaintiff and Class Members after a reasonable amount of time; and,

c. The Defendants would act within the proper time frame when it came to supplying the Plaintiff and Class Members with a notice or alert of the previously mentioned Data Breach.

133. The Defendants undoubtedly breached their implied contract with the Plaintiff and Class Members when they:

a. Decided to store the PII of the Plaintiff and Class Members on a publicly available database that was not protected by any form of multi-factor authentication and which could be accessed by members of the public on the internet; and,

b. Decided to wait an unreasonably long time to alert both the Plaintiff and the Class Members of the previously mentioned Data Breach.

134. It is a reasonable assumption that the Plaintiff and the Class Members would not have shared their information with the Defendants if they had known it would not be stored behind even a basic level of security. It is also a reasonable assumption that the Defendants would not wait multiple months before informing the impacted parties of the Data Breach that involved their PII.

135. The Defendants' breach of implied contract has led to the Plaintiff and Class Members suffering damages from:

a. Lost benefit of their bargain;

b. Monetary losses and expenses;

c. Loss of time; and,

d. The substantial loss of value attached to their PII.

136. The Defendants' breach of implied contract has led the Plaintiff and Class Members to suffer, and continue to suffer, from:

a. The continued fear of identity theft crimes, fraud, and abuse which will result in monetary loss;

b. Actual cases of identity theft, fraud, and abuse which have resulted in monetary loss;

c. Loss of confidentiality;

d. The illegal sale of their data by cybercriminals who now have their PII; and,

e. Expenses, or the loss of time, due to having to employ credit monitoring efforts;

f. Loss of time resulting from the extra time spent managing personal finances like banking statements and credit reports;

g. Decreased credit ratings;

h. Lost work time and opportunity costs; and,

i. Any other economic or non-economic harm.

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Putative Nationwide Rule 23 Class)**

137. All the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

138. The Plaintiff and Class Members both provided the Defendants with their valuable PII, and thus granted the Defendants a monetary benefit.

139. The Defendants also decided to garner further profit by foregoing the costs normally attached with reasonable data security systems and instead opted to leave the Plaintiff's and Class Members' PII in a vulnerable state.

140. The Defendants opted to forego installing effective security measures and thus choose to go with cheaper security measures. Both the Plaintiff and Class Members suffered directly as a result of this decision as it led to the aforementioned failure by the Defendants to protect their PII.

141. The Defendants should in no fashion be allowed to hold the monetary value that they gained from the Plaintiff and Class Members, as they gained this benefit from failing to implement just security measures and this violated the principles of equity and good conscience.

142. The Defendants failed to disclose their lack of security measures and thus gained this financial benefit through inequitable means.

143. It is well within reasonable belief that the Plaintiff and Class Members would not have provided the Defendants with their PII if they knew about the lack of data security measures being employed by the Defendants.

144. The Plaintiff and Class Members have no adequate remedy at law.

145. As a direct and proximate result of Defendants' actions, the Plaintiff and the Class have suffered and will suffer injury, including, but not limited to, the following:

a. Actual identity theft;

b. The loss of the opportunity of how their PII is used;

c. The compromise, publication, and/or theft of their PII;

d. Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII;

e. Lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft;

f. The continued risk to their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of Plaintiff and the Class; and,

g. Present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of the Plaintiff and the Class.

146. The Plaintiff and Class Members have suffered, and will continue to suffer, as a direct result of the Defendants' actions. The Defendants should be compelled to disgorge monetary funds into either a fund or trust for the benefit of the affected parties; funds that they unjustly received from them.

**COUNT IV**
**DECLARATORY AND INJUCTIVE RELIEF**
**(On behalf of Plaintiff and the Putative Nationwide Rule 23 Class)**

147. All the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

148. The Plaintiff and Class Members are opting to make this claim under the Federal Declaratory Judgement Act, 28 U.S.C. § 2201.

149. The Defendants failed in their owed duty of care to the Plaintiff and Class Members that requires reasonable security when it comes to the protection of their PII.

150. The Plaintiff and Class Members have suffered actual harm, and are at risk of additional or future harm, in the wake of the Data Breach which the Defendants caused by not fulfilling their contractual obligations and standard duties of care when it comes to data security measures, as well as their failure to address the shortcomings that led to the breach.

151. There is no sound reason to have faith in the Defendants' post-breach employee training and security, which would imply that they are still failing to meet their legal duties and contractual obligations.

152. Therefore, Plaintiff and the Class are seeking to declare that:

a. The current data security systems that the Defendants have in operation do not comply with their obligations and duties to provide adequate security; and,

b. In order to remedy these contractual shortcomings and protect the PII of the Plaintiff and Class Members going

forward, the Defendants must place into practice security measures that are considered industry standards which includes, but is not limited to, the following:

i. The employment of internal personnel whose sole role is to conduct regular tests, including audits of its systems, and to identify and correct any remaining areas of security concerns inside the Defendants' current systems

ii. The engagement of third-party auditors and internal personnel who continually observe automated security monitoring systems;

iii. The auditing, testing, and training of any security personnel and employees in regard to the new and updated security measures;

iv. The removal, in a reasonably proper and safe fashion, of any PII that is not necessary for the day-to-day operations of the Defendants;

v. The employment of consistent scans and security checks for any possible security breaches; and,

vi. The development of a system centered around the Defendants continually training and educating their security personnel and employees on how to handle highly sensitive, personally identifiable information which includes, but is not limited to, that of the Plaintiff' and Class Members' PII.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class Members, request judgment against the Defendants and that the Court grant the following:

A. For an Order certifying the Class, and appointing Plaintiff and their Counsel to represent the Class;

B. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of

the PII of Plaintiff and Class Members, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

C. For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including, but not limited to, an Order:

i. Prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

ii. Requiring Defendants to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii. Requiring Defendants to delete, destroy, and purge the PII of Plaintiff and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. Requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

v. Prohibiting Defendants from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vi. Requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

vii. Requiring Defendants to engage independent, third-party security auditors and internal personnel to run automated security monitoring;

viii. Requiring Defendants to audit, test, and train their security personnel regarding any new or modified procedures;

ix. Requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

x. Requiring Defendants to conduct regular database scanning and securing checks;

xi. Requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees'

respective responsibilities with handling PII, as well as protecting the PII of Plaintiff and Class Members;

xii. Requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii. Requiring Defendants to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting PII;

xiv. Requiring Defendants to implement, maintain, regularly review, and revise, as necessary, a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. Requiring Defendants to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential PII to third parties, as well as the

steps affected individuals must take to protect themselves; and,

xvi. Requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers, and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to Counsel for the class, and to report any deficiencies with compliance of the Court's final judgment.

D. For an award of damages, including, but not limited to, actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses and as further allowed by law;

F. For prejudgment interest on all amounts awarded; and,

G. Such other and further relief as this Court may deem just and proper.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,

Dated: April 22, 2025

By: /s/ Yanling Jiang, Esquire

Yanling JIANG, ESQUIRE
IL ID No: 6309336
JIANGIP LLC
33 W. Jackson Boulevard, 2W
Chicago, IL 60604

Tel: 630-733-9483
yanling@jiangip.com

SARA J. WATKINS, ESQUIRE*
PA ID No.: 325770
D. AARON RIHN, ESQUIRE*
PA ID No.: 85752
ROBERT PEIRCE & ASSOCIATES, P.C.
437 Grant Street, Suite 1100
Pittsburgh, PA 15219
Tel: 412-281-7229
swatkins@peircelaw.com
arihn@peircelaw.com

*_Pro Hac Vice_ admission to be sought

*Counsel for Plaintiff and the Proposed Class*